[Cite as *In re J.W.*, 2019-Ohio-4425.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:

J.W.

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Earle E. Wise, Jr., J.

Case Nos. 2019 CA 00041 and
2019 CA 00042

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. F2016-0655 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 25, 2019 |

APPEARANCES:

| | |
|---|---|
| For Appellee LCJFS | For Appellant Mother |
| WILLIAM C. HAYES<br>PROSECUTING ATTORNEY<br>JAMES CHOI<br>ASSISTANT PROSECUTOR<br>20 South Second Street, Fourth Floor<br>Newark, Ohio 43055 | JERMAINE COLQUITT<br>33 West Main Street<br>Suie 109<br>Newark, Ohio 43055 |
| | For Appellant Father |
| Guardian ad Litem | MICHAEL R. DALSANTO<br>33 West Main Street |
| ROBIN LYN GREEN<br>P.O. Box 157<br>Newark, Ohio 43058 | Suite 109<br>Newark, Ohio 43055 |

*Wise, John, J.*

{¶1}    Appellant-Mother K.A. and Appellant-Father J.W. appeal from the May 10, 2019, Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, terminating parental rights and granting permanent custody of their minor child J.W. to Licking County Job and Family Services.

STATEMENT OF THE FACTS AND CASE

{¶2}    The instant case is an appeal from the final disposition in a dependency action in the Licking County Court of Common Pleas, Juvenile Division, where the trial court granted permanent custody of J.W. (D.O.B. 9/24/2016) to the Licking County Department of Job and Family Services ("the Agency").

{¶3}    On October 26, 2016, an Ex Parte Order of Removal was granted with regard to the minor child J.W.

{¶4}    On October 27, 2016, the Agency filed a complaint alleging that J.W. was dependent due to Mother being homeless and Father being incarcerated.

{¶5}    On October 27, 2017, the magistrate granted emergency shelter care of J.W. to the Agency.

{¶6}    On December 21, 2016, and January 25, 2017, the trial court held a contested adjudicatory hearing. The Magistrate found J.W. to be a dependent child and ordered him into the temporary custody of the Agency. The trial court approved and adopted the case plan, which had been submitted on November 23, 2016.

{¶7}    The Agency filed a Motion for Legal Custody to Maternal [sic] Grandmother on September 25, 2017.[1] The hearing was set on December 18, 2017, but the parties

---

[1] The relative was in fact the paternal grandmother.

came to an agreement to an extension due to the relative caregiver no longer willing to take Legal Custody. As a result, on March 15, 2017, the Agency filed a Motion for Permanent Custody.

{¶8} On July 6, 2018, the parents filed a joint motion seeking additional time.

{¶9} On July 13, 2018, the trial court granted the parents' Motion to Continue the Permanent Custody hearing.

{¶10} On October 19, 2018, the permanent custody hearing commenced. Prior to the presentation of testimony, counsel for Appellant-Father moved the court for an additional continuance to allow more time to monitor Father's behavior, stating that he knew the State and the Guardian ad Litem were opposed to same. (T. at 6, 8). The magistrate denied the continuance with the caveat that she would possibly change her mind based on the evidence presented at the hearing. (T. at 9).

{¶11} At the hearing, the magistrate heard testimony from the following witnesses:

{¶12} The State's first witness was Appellant-Mother K.A. (T. at 10). Mother testified she was staying at the Salvation Army at the onset of this case. (T. at 13). Mother testified that she transitioned into a one-bedroom apartment with no electricity for about nine (9) months. (T. at 14). Mother further testified she then went to the Courage House Program and resided there from April, 2018, until to July, 2018, but she was kicked out of Courage House because she had allowed individuals to use her boyfriend, Appellant-Father J.W.'s food stamp card. (T. at 15). At the time of the Permanent Custody hearing, Mother was incarcerated for a probation violation, having tested positive for

methamphetamine. (T. at 15-16). Mother further testified that she was unemployed prior to her probation violation. (T. at 17).

{¶13} Appellant-Father J.W. testified he was incarcerated at the onset of this case for breaking and entering and theft charges in Knox County. (T. at 28). He was ordered to Spencer House but was unsuccessfully discharged for violating his community control. (T. at 29). Father testified that on two occasions in 2017 and 2018, he had multiple probation violations. (T. at 29). Father further testified that he uses methamphetamine when he is bored. (T. at 31).

{¶14} Mr. Tracy, a social worker with the Agency, testified that he was assigned to the case in June, 2017, because the previous social worker who was assigned to the case left the agency. (T. at 79). Mr. Tracy testified that the Agency got involved with this family due to Mother's drug use and Father's incarceration. (T. at 79-80). Mr. Tracy further testified that Mother was referred to multiple mental health services, but she was inconsistent in participating in those service. (T. at 82). Mother failed to successfully complete the mental health treatment. *Id.* Mr. Tracy testified that Mother has struggled with substance abuse throughout the duration of this case. (T. at 83). Mr. Tracy testified Mother was clean when she was participating in Courage House, but that after she was unsuccessfully discharged from there, she relapsed and continued to use methamphetamine. (T. at 83). Mr. Tracy testified that Mother has not completed any form of substance abuse treatment. (T. at 84).

{¶15} Mr. Tracy further testified that at the time he was assigned the case, Mother had housing through Behavioral Healthcare Partners ("BHP"). (T. at 88). However, Mother's housing did not have electricity due to past unpaid bills. (T. at 90). Mr. Tracy

further testified that after she left this residence, she was homeless until she stayed at Courage House for a temporary stay. (T. at 89-90). Mother was removed from Courage House due to a probation violation, testing positive for methamphetamine. *Id.* Mr. Tracy testified that upon her removal, Mother was again homeless. *Id.* Mr. Tracy testified that Mother had only one job over the duration of the case, and that her longest period of employment was about three weeks. (T. at 90).

{¶16} Mr. Tracy testified Appellant-Father was engaged in mental health services at various places, but that he did not have concerns regarding his mental health. (T. at 93). Mr. Tracy testified that Father's relationship with Mother has been uncertain throughout the duration of this case. (T. at 93-94). Mr. Tracy further testified that he had concerns regarding their relationship because he believed that they make each other relapse. *Id.* Mr. Tracy testified that for a short period of time, Father was living with Mother in the home that Mother acquired through the help of BHP. (T. at 95). Mr. Tracy further testified that Father refused to pay for the electric bill in that home because he did not owe the money. (T. at 95). After living with Mother, Father stayed at Spencer House for a short period and then resided at Franklin County Community Based Correctional Facility ("CBCF") for five months due to his probation violation. (T. at 95-96). Mr. Tracy testified that after his release from CBCF, Father stayed at the Salvation Army for a week. (T. at 97). At the time of the Permanent Custody hearing, Father was at St. Vincent Homeless Shelter. *Id.*

{¶17} Mr. Tracy testified that Father has continued to use methamphetamines throughout this case. (T. at 99). Mr. Tracy further testified that Father had been clean for

periods of time, but that he always relapsed. (T. at 99). Specifically, Mr. Tracy testified that Father would use illegal substances when he would be bored at work. (T. at 99).

**{¶18}** Mr. Tracy testified that the minor child, J.W., has been placed in two different placements since the beginning of this case. (T. at 104). Mr. Tracy testified that the first placement was unable to continue to care for J.W. because they were an older couple. (T. at 104). J.W. was therefore moved to a different placement in April, 2018. (T. at 104). Mr. Tracy testified that the second placement family loves J.W. and J.W. loves them. (T. at 105). Mr. Tracy further testified that this second placement family wishes to adopt J.W. (T. at 105).

**{¶19}** Mr. Tracy testified that he did search for a less restrictive alternative relative or kinship placement, that being the paternal grandmother, R.W. (T. at 105). However, Mr. Tracy testified that he had a conversation with her and she conveyed to the Agency that she could no longer take care of J.W. on a full-time basis. (T. at 105). Mr. Tracy further testified that he has spoken with paternal grandmother several times subsequent to the initial conversation and she continues to convey the same sentiments as before. (T. at 105-106). Mr. Tracy also testified that the paternal grandmother believed that it was in the child's best interest to be adopted at this time. *Id*. Moreover, Mr. Tracy testified the problems that led to the initial removal of the child are still present. (T. at 106).

**{¶20}** The Guardian ad Litem expressed the view in her written report that the child's foster parents have provided excellent care, and that the child is well bonded with them and she was in support of the Motion for Permanent Custody.

**{¶21}** At the conclusion of the hearing, counsel for Appellant-Father renewed his motion for a continuance.

**{¶22}** On December 3, 2018, the Decision of Magistrate was filed. The Decision recommend the minor child be placed in the permanent custody of the Agency. The Magistrate's decision to recommend permanent custody to the Agency effectively denied Appellant's motion to continue.

**{¶23}** On December 17, 2018, Mother filed "Initial Objections" to the Magistrate's Decision.

**{¶24}** On February 20, 2019, the parents filed "joint objections" to the Magistrate Decision.

**{¶25}** On May 10, 2019, the Court filed its own Judgment Entry after an independent review of the record. The Court held that Mother's "Initial Objections" did not satisfy the requirements pursuant to Juv. Rule 40(D)(3)(b)(ii). The Court found that the "joint objections" "have no merit even if, for purposes of argument only, they were timely filed." *See* Judgment Entry dated May 10, 2019. The trial court independently reviewed the Magistrate's Decision, the record, and the exhibits, and approved the Magistrate's Decision and Orders as its own Orders. The trial court found "the record contains substantial, credible evidence which supports the Magistrate's findings as set forth in his decision. This Court can find no errors of law or other defects prejudicial to the rights of the parents." (*See* Judgment Entry dated May 10, 2019).

**{¶26}** Appellants now raise the following assignments of error on appeal:

ASSIGNMENTS OF ERROR

**{¶27}** *"*I. THE MAGISTRATE ABUSED ITS DISCRETION WHEN IT DENIED FATHER'S REQUEST FOR A CONTINUANCE OF THE PERMANENT CUSTODY HEARING.

**{¶28}** "II. THE MAGISTRATE ERRED WHEN HE FOUND, BY CLEAR AND CONVINCING EVIDENCE, THAT THE STATE MET ITS BURDEN OF PROOF IN GRANTING PERMANENT CUSTODY OF J.W. TO THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES.

**{¶29}** "III. THE TRIAL COURT ERRED IN FINDING THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY."

### I.

**{¶30}** In their first assignment of error, Appellants argue that the magistrate erred in denying Appellant-Father's request for a continuance of the permanent custody hearing. We disagree.

**{¶31}** Juv. R. 23 provides: "Continuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. In order to find an abuse of discretion, we must determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶32}** In reviewing a trial court's denial of a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to

the need for the continuance; and other relevant factors, depending on the unique facts of each case. *State v. Unger,* supra.

**{¶33}** Here, the trial court had already granted a joint motion for continuance filed July 6, 2018, for the July 13, 2018, permanent custody hearing, therein allowing the parties additional time to address the issue and monitor their behavior. At that time the trial court granted the parties an additional three months to work on their case plan objectives.

**{¶34}** Here, the parents had over a year and a half to make progress on their case plans and at the time of the hearing, Mother was incarcerated and Father was living in a homeless shelter.

**{¶35}** We therefore find that the trial court did not abuse its discretion in denying Appellant-Father's second motion for continuance, made at the commencement of the permanent custody hearing on October 19, 2018.

**{¶36}** Appellants' first assignment of error is overruled.

### II., III.

**{¶37}** Appellants, in assignments of error II and III, challenge the trial court's order terminating parental rights and granting permanent custody of their minor child to the Agency. Appellants specifically challenge the trial court's findings that the child could not and should not be placed with father within a reasonable time and that it was in the child's best interest for permanent custody to be granted.

**{¶38}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must

be based on clear and convincing evidence. R.C. §2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶39}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶40}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

**{¶41}** Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant

permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending.

**{¶42}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶43}** In the case sub judice, the trial court found that R.C. §2151.414(B)(1)(a) applied. Pursuant to R.C. §2151.414(B)(1)(a), the trial court found the child could not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. In making this decision, the trial court must consider the factors of R.C. §2151.414(E). The trial court specifically found that R.C. §2151.414(E)(1),(4),(14) and (16) applied to appellants.

**{¶44}** R.C. §2151.414 states, in relevant part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court

shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties

...

(16) Any other factor the court considers relevant.

{¶45} In the case *sub judice*, there was testimony as to Appellant-Mother's substance abuse, financial instability, mental health issues, lack of appropriate housing, lack of employment, and inconsistent participation in mental health services per her case

plan. Testimony was also presented that Mother tested positive for methamphetamines, a probation violation, and was therefore kicked out of Courage House. Mother was also incarcerated at the time of the permanent custody hearing.

**{¶46}** Testimony was also presented as to Father's incarceration at the time of removal of the child, lack of stable or independent housing, and substance abuse.

**{¶47}** Based on the foregoing, we find that there was clear and convincing evidence supporting the trial court's finding that Appellants had continuously and repeatedly failed to substantially remedy the conditions which caused the child to be placed outside the home, and that the child could not be placed with either parent within a reasonable time or should not be placed with either parent.

**{¶48}** Additionally, R.C. §2151.353(G) provides:

(G) Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section. In resolving the motion, the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of section 2151.415 of the Revised Code.

**{¶49}** Here, the trial court noted in its decision that the statutory two year "sunset provision" expired eight (8) days after the permanent custody hearing and therefore the court could not extend temporary custody any longer.

**{¶50}** Appellants also challenge the trial court's finding that it was in the best interest of the child for permanent custody to be granted to the agency. R.C. §2151.414(D) states as follows:

> (1)    In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

> (a)   The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> (b)   The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

> (c)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive

twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)    Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶51}** There was testimony at the hearing that the child was initially placed with a relative, his paternal grandmother, and that the Agency had moved the court for legal custody to the grandmother but withdrew the motion when the grandmother stated that she did not wish to have custody of the child. The child was then placed in another foster home, where he remained until the permanent custody hearing.  Testimony was presented that the child was bonded with the foster family and that they wished to adopt him. Further testimony was presented that the problems which led to the removal of the child still existed at the time of the permanent custody hearing.

**{¶52}** Based on the foregoing, we find that there was clear and convincing evidence that it was in the best interest of the child for permanent custody to be granted to the agency.

**{¶53}** Appellants' assignments of error II and III are, therefore, overruled.

**{¶54}** Accordingly, the judgment of the Licking County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights and granting permanent custody of appellants' minor child to Licking County Job and Family Services is affirmed.


By: Wise, John, J.

Hoffman, P. J., and

Wise, Earle, J., concur.


.

JWW/d 1020